FILED & JUDGMENT ENTERED
David E. Weich

Apr 27 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

In Re:                              )     Case No. 09-10874
                                    )          Chapter 11
**SPICEWOOD DEVELOPMENT, LLC,**     )
                                    )
                    Debtor.         )
_____)

**ORDER ON DEBTOR'S OBJECTION TO CLAIM OF SAMANTHA C. FORREST;
FORREST'S APPLICATION FOR APPROVAL OF FEES;
and FORREST'S RENEWED MOTION FOR ADEQUATE PROTECTION
AND RELIEF FROM THE AUTOMATIC STAY**

This matter is before the court on the debtor's Objection to Claim of Samantha C. Forrest; Forrest's Application for Approval of Fees; and Forrest's Renewed Motion for Adequate Protection and Relief From the Automatic Stay and Request for Application of 11 U.S.C. § 362(e) and Determination of a Single Asset Real Estate Case. The court has determined that Forrest's secured claim should be allowed in the amount of $101,561.15, which includes approved attorneys' fees of $15,883.17, and that the motion for relief from stay should be denied because the claim is adequately protected by the value of the real property

-- at least through the hearing on confirmation of the debtor's plan of reorganization.

## Background

1. The debtor, Spicewood Development, LLC ("Spicewood"), and Forrest were investors and owners of an entity named Villas at Cedar Hill, LLC ("Villas"). Villas was formed for the purpose of developing low-income housing on real property owned by Villas.

2. In 2004, Villas borrowed $1.65 million from Blue Ridge Savings Bank (the "Bank") in order to finance construction of the low-income housing. This loan was evidenced by a Promissory Note executed by Villas.

3. As security for this loan, Villas granted the Bank a deed of trust on the real property it owned. As additional security, Forrest executed a Commercial Guaranty and provided the Bank with a deposit of $150,000 in a certificate of deposit. Also, Spicewood signed the Villas Deed of Trust and granted the Bank a security interest in additional real property that it owned.

4. Spicewood did not sign the Promissory Note or obligate itself to the Bank or Forrest, other than by granting the deed of trust on its real property.

5. Villas defaulted on the Note, and over a number of years the parties and the Bank engaged in many negotiations and

modifications that are not relevant to the determination of the present motions.

6. In September 2006, the Bank executed on Forrest's Guaranty and took possession of her certificate of deposit which, at that time, was valued at approximately $162,000. Accordingly, that amount was applied to the outstanding balance of the Villas Note.

7. Thereafter, Mr. James Hitt (who is also the owner and the manager of Spicewood) signed a document which stated that "The $150,000.00 will be paid before any other creditors, lien holders or any other parties." See (Exhibit A, Motion to Reopen Hearing on Account of Newly Discovered Evidence, Docket No. 78, March 25, 2010). Hitt signed that document as manager of Villas.

8. The Villas Note came due in the spring of 2009. Villas defaulted and no further modification was made. Thus, the Bank initiated foreclosure proceedings on the Villas real estate, the real estate pledged by Spicewood, and other property that secured the Villas indebtedness.

9. Just prior to the Bank's foreclosure sales, Forrest bought the Villas' Note from the Bank for the full amount then owing on it -- $618,319.55.

10. Forrest then completed the foreclosure sales on all but the Spicewood property thereby reducing the amount owed on

the Villas Note to $85,677.98. Spicewood filed this Chapter 11 bankruptcy proceeding on August 11, 2009, which stayed the foreclosure sale of the Spicewood property.

    11. Forrest now seeks to establish a claim against Spicewood in the amount of $347,129.43. That claim is comprised of the following elements: (a) the balance of the Villas Note, $85,677.98; (b) the amount of Forrest's certificate of deposit taken by the Bank pursuant to her Guaranty of the Villas Note, $161,929.15, plus interest from September 2006 totaling $52,456.88 (for a total guaranty claim of $214,386.03); and (c) attorneys' fees of $47,065.42 incurred both prior to and after Forrest acquired the Villas Note.[1]

    12. Forrest, as owner of the Note secured by Spicewood's real property, also seeks relief from the automatic stay to complete the foreclosure of the Spicewood property initiated by the Bank.

    13. The only evidence presently before the court indicates that the Spicewood property has a value of approximately $320,000.

## Statement of the Case

    14. Forrest has asserted a claim for the balance of the Note, the amount of her certificate of deposit, and attorneys'

---

[1] The court notes that the claim amount of $347,129.43 is $1,000 more than the claim amount listed in the Schedule attached to

fees.  Spicewood has filed an Objection to Claim of Samantha C. Forrest.

15.  Forrest has filed a Renewed Motion for Adequate Protection and Relief From the Automatic Stay and Request For Application of 11 U.S.C. § 362(e) and Determination of a Single Asset Real Estate Case.  She did not pursue the single asset real estate claim at the hearing on these matters, so the court will not determine that issue at this time.

16.  Forrest also filed an Application For Approval of Fees that the court will consider as part of her claim determination.

## Discussion

**A.   Determination of Forrest's Claim Amount**

<u>Balance of the Note</u>

17.  Spicewood has not objected to the part of Forrest's claim representing the remaining unpaid balance of the Villas Note.  Forrest owns that Note and the Deed of Trust subject Spicewood's real property to it.  Consequently, Forrest is entitled to the $85,677.98 element of her claim.

<u>Certificate of Deposit</u>

18.  Forrest has asserted that Spicewood is obligated to her for the amount of her certificate of deposit (plus three and one half years' interest) that was applied to Villas' debt by the Bank pursuant to her Guaranty.  Forrest bases her claim on

---

the Brief in Support of Claim by Samantha Forrest (Docket No. 73) because there was an addition error on that Schedule.

5

principles of surety or subrogation. But, ultimately, the court can find no connection between Forrest and Spicewood that would give rise to any obligation to her by Spicewood as a result of her guaranty of Villas' debt.

19. Forrest bases her claim largely on North Carolina statutes governing surety. N.C. Gen. Stat. § 26-12 provides in part: "As used in this section, 'surety' includes guarantors . . . or others who undertake liability on the obligation and for the accommodation of another." In addition, N.C. Gen. Stat. § 26-3.1 provides as follows:

> A surety who has paid his principal's note, bill, bond or other written obligation, may either sue his principal for reimbursement or sue his principal on the instrument and may maintain any action or avail himself of any remedy which the creditor himself might have had against the principal debtor. No assignment of the obligation to the surety or to a third-party trustee for the surety's benefit shall be required.

See N.C. Gen. Stat. § 26-3.1(a). Finally, subparagraph (b) contains the following definition of surety, which is the same definition as that found in N.C.G.S. § 26-12: "(b) The word "surety" as used herein includes a guarantor, accommodation maker, accommodation indorser, or other person who undertakes liability for the written obligation of another." See N.C. Gen. Stat. § 26-3.1(b).

20. Forrest is correct in her assertion that she is a "surety." But, the fundamental flaw in her argument is that she is not a surety or subrogee of Spicewood. The statute provides

6

that a surety "who has paid <u>his principal's note</u>" may sue his principal.  See N.C. Gen. Stat. § 26-3.1(a) (emphasis added). Spicewood is not Forrest's "principal" on the debt -- her principal is Villas.  Forrest paid the debt owed to the Bank by <u>Villas</u>.  Spicewood did not sign that Note, and thus has no obligation on it.  Rather than being a "principal," Spicewood is simply a stranger to that obligation.

    21.  Forrest also cites a number of cases to support her claim: <u>Liles v. Rogers</u>, 113 N.C. 197, 18 S.E. 104 (1893); <u>Bank of Commerce and Trusts v. McArthur</u>, 261 F. 97 (E.D.N.C. 1919), <u>aff'd</u>, 265 F. 1019 (4th Cir. 1920); and <u>Carter v. Curlew Creamery Co.</u>, 20 Wash. 2d 275, 147 P.2d 276 (1944).  All of these cases state general principles of surety law.  However, none of them support Forrest's position.

    22.  Forrest also asserts rights arising out of Mr. Hitt's statement regarding her being repaid ahead of other creditors. The document is signed clearly on behalf of Villas only. It does not create any obligation on the part of Spicewood. As such, it gives Forrest no additional claim against Spicewood.

    23.  Finally, Forrest makes an equitable argument that, if her certificate of deposit had not been applied to the Villas debt, then the balance of the Note that Spicewood's land secures would be that much greater.  Consequently, it would give Spicewood a "windfall" if Forrest could not collect the value of

her certificate of deposit from Spicewood.  While that argument has some superficial equitable appeal, it must fail.  Spicewood certainly receives some benefit from reduction of the Note balance by Forrest's certificate of deposit -- as it does from any payments made by Villas and the proceeds of the foreclosure of other collateral securing the Note.  But, that is not a "windfall."  Rather, it is simply the legal consequence of the transactions that were executed:  the fact that Spicewood was not obligated on the Note and had no obligations directly to Forrest.

24. Consequently, Forrest is not entitled to a claim against Spicewood for the amount of her certificate of deposit or interest thereon.

Attorneys' Fees

25. Forrest seeks to recover from Spicewood her attorneys' fees incurred in connection with both (1) her relations with Villas and the Bank and (2) her collection of the Note after purchasing it from the Bank.

26. From December 2008 through January 2010, Forrest was represented by Peter Henry.  It is impossible to tell from his affidavit, but it appears that substantially all of Henry's representation of Forrest was in connection with the Villas loan modifications and Forrest's relations with Villas, Spicewood, and the Bank.  Henry's fees amount to $31,182.25.

27. From the time Forrest bought the Villas Note from the Bank, July 16, 2009, through January 2010, Forrest was represented by other members of the firm of Van Winkle, Buck, Wall, Starnes and Davis, P.A. in connection with collection of that Note. The total fees and expenses for that representation is $15,883.17.

28. The only basis on which Forrest can claim reimbursement for attorneys' fees from Spicewood is the provisions of the Deed of Trust. There are no other fee-shifting agreements between the parties or other bases for such assessment. Consequently, Forrest is not entitled to recover the $31,182.25 attorneys' fees she incurred for general representation in connection with the Villas loan.

29. The Deed of Trust provides as follows:

> **CONVEYANCE AND GRANT** . . . as security for the Indebtedness . . . and costs of collection (including attorneys' fees as provided in the Note . . . .
>
> \*\*\*\*\*
>
> **THIS DEED OF TRUST,** . . . IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE --- AND DEED OF TRUST.
>
> \*\*\*\*\*
>
> **Attorneys' Fees; Expenses.** . . . Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees . . . . Expenses covered by this paragraph include . . . Lender's attorneys' fees and Lender's legal expenses . . . including attorneys' fees and expenses for bankruptcy

  proceedings (including efforts to modify or vacate any automatic stay or injunction) . . . .

<u>See</u> (Exhibit B, Renewed Motion for Adequate Protection and Relief from the Automatic Stay and Request for Application of 11 U.S.C. § 362(e) and Determination of a Single Asset Real Estate Case, Docket No. 58, January 20, 2010).

  30. Forrest, as the owner of the Note secured by the Deed of Trust, is seeking to recover the unpaid balance of the Note. As such, she is entitled to recover her attorneys' fees and expenses on that account from the time she bought the Note.

  31. The fees and expenses sought for collection of the Note amount to $15,883.17. The claim for fees is not documented in a way that enables the court to review all the work that was done on Forrest's behalf. While normally that would be fatal to a fee request, it is not so here for two reasons. First, much of the work has played out before the court or is apparent from proceedings before the court. Second, the amount sought is within the fifteen percent fee recognized for collection in the North Carolina General Statutes. The court is satisfied that the attorneys' efforts were necessary, performed efficiently, ably, and at market rates, and that the total fee sought is reasonable.

  32. Consequently, Forrest is allowed an additional claim of $15,883.17 for her attorneys' fees in connection with collection of the Note.

<u>Total Claim</u>

33. Forrest is entitled to a total claim of $101,561.15. This amount includes the $85,677.98 unpaid balance of the Note and $15,883.17 in attorneys' fees and is determined as of March 17, 2010, which is the date the Note calculations were made.

**B.  Determination of Motion for Relief From Stay**

34. Forrest's Renewed Motion for adequate protection and for relief from the automatic stay is based upon her assertion that the value of Spicewood's property is not sufficient to protect her interest.

35. The appraisal of the value of Spicewood's property indicated a value of $32,000 for a "median" lot, or by computation, a total value of $320,000 for its ten lots.

36. With Forrest's allowed claim determined to be just under $102,000, it appears that she is adequately protected by the value of Spicewood's property, and by a comfortable margin.

37. Further, the court anticipates conducting a confirmation hearing on Spicewood's Plan of Reorganization within a short time. Consequently, the court declines to grant relief from the automatic stay or adequate protection at this time. Rather, it will continue Forrest's Renewed Motion to be heard along with Spicewood's confirmation hearing (and other motions filed by the Bankruptcy Administrator).

It is therefore **ORDERED** that:

1. The court approves for inclusion in Samantha Forrest's claim an attorneys' fee of $15,883.17;

2. Samantha Forrest's secured claim against the debtor (including the allowed attorneys' fees) is determined to be $101,561.15 (as of March 17, 2010); and

3. Samantha Forrest's Renewed Motion for Adequate Protection and Relief From the Automatic Stay and Request for Application of 11 U.S.C. § 362(e) and Determination of a Single Asset Real Estate Case is denied at this time, but is continued to May 4, 2010, at 9:30 a.m. at the Federal Courthouse, First Floor, 100 Otis Street, Asheville, North Carolina, 28801, for hearing in conjunction with the debtor's confirmation of its plan of reorganization.

**This Order has been signed electronically.**   **United States Bankruptcy Court**
**The Judge's signature and court's seal**
**appear at the top of the Order.**